<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VICTOR ESPINOZA-LOOR, | Civil No. 11-6993 (FSH) |
| Petitioner, | |
| v. | <u>OPINION</u> |
| ERIC H. HOLDER, JR., et al., | |
| Respondents. | |

**APPEARANCES**:

    VICTOR ESPINOZA-LOOR, A 046 367 303
    Essex County Correctional Facility
    354 Doremus Avenue
    Newark, New Jersey 07105
    Petitioner <u>Pro</u> <u>Se</u>

    PAMELA R. PERRON                ELIZABETH J. STEVENS
    ASST. UNITED STATES ATTORNEY  Office of Immigration Litigation
    970 Broad Street, Room 700          450 Fifth Street, NW, Room 6108
    Newark, New Jersey  07102            Washington, DC  20044
    Attorneys for Respondents             Attorneys for Respondents

<u>HOCHBERG</u>, District Judge:

       On November 30, 2011, Victor Espinoza-Loor, a native and citizen of Ecuador, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his pre-removal period mandatory detention, pursuant to 8 U.S.C. § 1226(c), in the custody of respondents and the Department of Homeland Security ("DHS"), since May 17, 2011.  Respondents filed an Answer, a Supplemental Answer, declarations, and exhibits, and Petitioner filed a Reply, Supplemental Reply, and motion to expedite the proceeding.  Because Espinoza-Loor filed his § 2241 Petition

when he was detained for about six months and his current detention of 13 months is not unreasonable, this Court will dismiss the Petition. The dismissal is without prejudice to the filing of a new § 2241 petition by Espinoza-Loor in the event that his detention becomes unreasonably prolonged within the meaning of Diop v. ICE/Homeland Security, 656 F.3d 221 (3d Cir. 2011), and Leslie v. Attorney General of the U.S., 678 F.3d 265 (3d Cir. 2012).

## I.  BACKGROUND

Victor Espinoza-Loor, a native and citizen of Ecuador, challenges his detention in the custody of DHS at Essex County Correctional Facility in Newark, New Jersey. The facts are undisputed. Espinoza-Loor was admitted to the United States as a lawful permanent resident on July 4, 1998, at the age of 17. On November 22, 2002, the Superior Court of New Jersey, Law Division, Hudson County, entered a judgment of conviction against Petitioner in State v. Espinoza, Ind 1313-06-02 judgment (N.J. Super. Ct., Law Div., Dec. 2, 2002), sentencing him to 364 days in jail, based on his guilty plea to third-degree receiving stolen property. (Dkt. 4-1 at 9.) On April 28, 2006, the same court entered a judgment of conviction against Petitioner in State v. Espinoza, Ind. 685-5-05 judgment (N.J. Super. Ct., Law Div., May 1, 2006). (Dkt. 4-1 at 12.) The Law Division sentenced Petitioner to a three-year term of imprisonment based on his guilty plea to third-degree aggravated assault. Id.

On May 17, 2011, DHS served Espinoza-Loor with a notice to appear, charging him with removal pursuant to 8 U.S.C. § 1227(a)(2(A)(ii) based on his conviction of two crimes of moral turpitude. (Dkt. 4-1 at 21.) DHS took Espinoza-Loor into custody on that date pursuant to a warrant for his arrest, and notified him of its determination that he would be subject to mandatory detention pending a final determination on his removal. (Id. at 23, 24.) The Immigration Court

scheduled his appearance before Immigration Judge Reichenberg on May 26, 2011, June 9, 2011, June 23, 2011, July 12, 2011, August 9, 2011, August 30, 2011, October 26, 2011, and January 3, 2012, but the matter was adjourned each time at Espinoza-Loor's request. (Dkt. 4-2 at 2.) On September 20, 2011, and November 17, 2011, the hearing was adjourned from a Master Calendar to an Individual Calendar for a merits hearing. On January 23, 2012, Petitioner's wife filed an I-130 Petition to adjust his status as an Alien Relative, and on January 24, 2012, Immigration Judge Reichenberg adjourned the hearing because there was insufficient time to complete the matter. (Dkt. 4-2 at 2-3; Dkt. 11-1 at 3.) On March 16, 2012, DHS approved the I-130 Petition. Id. On March 27, 2012, the Immigration Judge reset the case, and on April 11, 2012, the parties appeared before Judge Reichenberg, who adjourned the case to May 1, 2012, at which time the parties appeared. (Dkt 16-1.) On May 11, 2012, the parties appeared before Judge Reichenberg, who ruled that Espinoza-Loor was ineligible to apply to waive a ground of inadmissibility pursuant to INA § 212(h). Id. On June 13, 2012, Judge Reichenberg pretermitted the application to adjust status, denied Petitioner's motion for an adjournment, denied his applications for asylum, withholding of removal, and protection under the Convention Against Torture, and ordered him removed to Ecuador. Id.

On November 23, 2011, Espinoza-Loor executed the § 2241 Petition presently before this Court. (Dkt. 1.) The Clerk accepted it for filing on November 30, 2011. This Court ordered service and the filing of an answer. (Dkt. 2.) Respondents filed an answer and Petitioner filed a Reply. This Court ordered a supplemental answer and reply, which the parties duly filed. Espinoza-Loor filed a motion to expedite the Petition and Respondents filed a response.

## II.  DISCUSSION

A.  Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied:  (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989).  This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of DHS at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and he asserts that his mandatory detention is not statutorily authorized and violates due process.  See Zadvydas v. Davis, 533 U.S. 678, 699 (2001); Diop v. ICE/Homeland Security, 656 F. 3d 221, 226 (3d Cir. 2011).

B.  Statutory Authority for Petitioner's Detention

The statutory authority to detain an alien depends on where the alien is in the removal process.  Section 1226 governs the pre-removal-period detention of an alien; § 1231(a)(2) mandates detention during the removal period established in § 1231(a)(1)(B); and § 1231(a)(6) provides the Attorney General with discretionary authority to detain aliens beyond the removal period, or release them under supervision.  See 8 U.S.C. §§ 1226, 1231.

Section 1226(a) authorizes the arrest, detention and release of aliens pending a decision on whether the alien is to be removed from the United States, except as provided in § 1226(c).[1] See 8 U.S.C. § 1226(a). Section § 1226(c), an exception to § 1226(a), mandates detention of specified criminal aliens during removal proceedings, provided detention does not continue for a prolonged period of time. See 8 U.S.C. § 1226(c); Diop v. ICE/Homeland Sec., 656 F. 3d at 232. Section 1226 provides in full:

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General –
>
>   (1) may continue to detain the arrested alien; and
>
>   (2) may release the alien on –
>
>     (A) bond of at least $1,500 . . ; or
>
>     (B) conditional parole; but
>
>   (3) may not provide the alien with work authorization . . . unless the alien is lawfully admitted for permanent residence or otherwise would . . . be provided such authorization.
>
> (b) Revocation of bond or parole
>
> The Attorney General at any time may revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien.
>
> (c) Detention of criminal aliens

---

[1] Section 1226(b) authorizes the Attorney General to "at any time . . . revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b).

>(1) Custody
>
>The Attorney General shall take into custody any alien who -
>
>(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
>(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
>(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
>
>(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
>when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
>(2) Release
>
>The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.  A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226.

Under § 1231(a)(1)(B), the removal period begins **at the latest** of several events. Specifically,

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

In this case, the removal period has yet to begin under § 1231(a)(1)(B)(i), since Espinoza-Loor's removal order, which was entered June 13, 2012, is not administratively final. See Leslie v. Attorney General, 678 F.3d 265, 270 (3d Cir. 2012) (Pre-removal period detention under § 1226 ends when the removal period begins under 8 U.S.C. § 1231(a)(1)(B)). An order of removal becomes "final upon the earlier of –(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B). See Giraldo v. Holder, 654 F.3d 609, 611 (6th Cir. 2011); Hakim v. Holder, 611 F.3d 73, 77 (1st Cir. 2010); Chupina v. Holder, 570 F.3d 99, 103 (2d Cir. 2009); United States v. Calderon-Minchola, 351 Fed. App'x 610, 611 n.1 (3d Cir. 2009); Del Pilar v. U.S. Attorney General, 326 F.3d 1154, 1156 (11th Cir. 2003). A petition for review "must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). Here, Espinoza-Loor has until approximately July 13, 2012, to appeal to the BIA. Under these circumstances, the order of

removal is not administratively final, Espinoza-Loor's removal period has not yet begun, and his detention continues to be governed by 8 U.S.C. § 1226, the statute authorizing pre-removal-period detention.

Espinoza-Loor argues in his Supplemental Reply that he is not subject to mandatory pre-removal period detention under 8 U.S.C. § 1226(c) because he was not taken into custody until 2011, four years after he was released from criminal incarceration for the last crime underlying the charges for removal.  The government argues that this Court should defer under Chevron USA, Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), to the BIA's determination of § 1226(c) in Matter of Rojas, 23 I.&N. Dec. 117 (BIA 2001).

Matter of Rojas involved the alien's appeal to the BIA of the Immigration Judge's rejection of the argument that Rojas was not subject to mandatory detention under § 1226(c) because DHS failed to apprehend him at the time of his release from incarceration on parole for an offense covered by § 1226(c), and instead waited two days before taking him into custody. See Matter of Rojas, 23 I. & N. Dec. 117.  The BIA determined that the language in § 1226(c)(1) is not clear, but is susceptible to different readings. Id. at 120.  The BIA stated that, although "[t]he statute does direct the Attorney General to take custody of aliens immediately upon their release from criminal confinement . . . Congress was not simply concerned with detaining and removing aliens coming directly out of criminal custody; it was concerned with detaining and removing *all* criminal aliens." Id. at 122.  The BIA held that Rojas "is subject to mandatory detention pursuant to section [1226(c)], despite the fact that he was not taken into Service custody immediately upon his release from state custody." Matter of Rojas, 23 I. & N. Dec. at 127.

In Desrosiers v. Hendricks, Civ. No. 11-4643 (FSH) sl. opinion (D.N.J. Dec. 30, 2011), this Court deferred to Rojas after finding that § 1226(c) is ambiguous and the BIA's interpretation of the statute was a permissible construction of the statute. Accord Diaz v. Muller, 2011 WL 3422856 (D.N.J. Aug. 4, 2011).[2] This Court rejected the argument that Desrosiers "is not subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) because, although his crime is one that is covered by the mandatory detention provisions, he is not subject to those provisions because he was not detained 'when released from custody' (because he got a sentence of probation)." Id. at p. 2. This Court held that an alien like Desrosiers, who was convicted of committing a crime enumerated by § 1226(c) but sentenced to probation, is nevertheless subject to mandatory pre-removal-period detention under § 1226(c).

Moreover, the only Court of Appeals to have squarely considered the issue recently applied Chevron and "conclude[d] that the BIA's determination that criminal aliens like Hosh are subject to mandatory detention, despite not having been detained immediately upon release from state custody, is based on a permissible construction of § 1226(c)." See Hosh v. Lucero, 680 F.3d 375, 380 (4th Cir. 2012). The Fourth Circuit explained,

> In enacting § 1226(c), Congress had a range of options available to it with respect to how aggressively it sought to detain criminal aliens. If we accept that "when . . . released" means "at the moment of release," then we must conclude that Congress intended to take an aggressive stance against criminal aliens, i.e., Congress wanted federal authorities to detain criminal aliens *immediately* upon their release from other custody. We cannot, however, take another step and find that, if the criminal alien was not immediately detained after release due to an administrative oversight or any other reason, then Congress's clear intent was to have that criminal alien no longer be subject to the mandatory detention provision

---

[2] But see, e.g., Kot v. Elwood, 2012 WL 1565438 (D.N.J. May 2, 2012); Nunez v. Elwood, 2012 WL 1183701 (D.N.J. Apr. 9, 2012); Christie v. Elwood, 2012 WL 266454 (D.N.J. Jan. 30, 2012).

> of § 1226(c).  With this in mind, we conclude that it is far from plain, and indeed unlikely, that "when . . . released" means "at the moment of release, *and not later*."  While that conclusion is possible, we think that it is strained.

Hosh, 680 F.3d at 380 (footnote omitted) (emphasis in original).

This Court rejects Petitioner's contention that he is not within the scope of § 1226(c) because he was not taken into custody for the offenses underlying the notice to appear until 2011, four years after New Jersey released him from criminal incarceration.³

C.  Reasonableness of Petitioner's Detention

The Petition requires this Court to resolve whether Espinoza-Loor's pre-removal period detention for 13 months (since May 17, 2011) is unreasonable in length under Diop, 656 F.3d at 223.  In Diop, the Third Circuit held that 8 U.S.C. "§ 1226(c) contains an implicit limitation of reasonableness:  the statute authorizes only mandatory detention that is reasonable in length . . . . Should the length of [an alien's] detention become unreasonable, the Government must justify its continued authority to detain him at a hearing at which it bears the burden of proof."  Diop, 656 F.3d at 235.  The Third Circuit held that Diop's mandatory pre-removal period detention of 35 months was unreasonable in length.  Id. at 233.  The Circuit determined reasonableness as follows:

> Demore emphasized that mandatory detention pursuant to § 1226(c) lasts only for a "very limited time" in the vast majority of cases. 538 U.S. at 529 & n. 12.  In fact, Demore relied on statistics showing that detention under § 1226(c) "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which an alien chooses to

---

³ The "when . . . released" issue is pending before the Third Circuit in Sylvain v. Holder, C.A. No. 11-3357 (3d Cir. docketed Aug. 31, 2011) (DHS appealed Judge Pisano's order granting habeas relief and ordering a bond hearing), and Desrosiers v. Hendricks, C.A. No. 12-1053 (3d Cir. docketed Jan. 11, 2012) (petitioner's appeal of this Court's order denying habeas relief), but briefs have not yet been filed in either appeal.

appeal." Id. at 530. This leads us to believe that the result may well have been different had the petitioner in Demore been detained for significantly longer than the average. Indeed, the petitioner in Demore had been detained for only slightly longer than the average (6 months) when his habeas petition was decided. Assuming, without deciding, that this was a presumably reasonable period of detention, and comparing it to Diop's 35 months of detention, which was nearly six times longer, leads us to conclude that Diop's detention, without any post-Joseph hearing inquiry into whether it was necessary to accomplish the purposes of § 1226(c), was unreasonable.

The Government argues that there was no "unreasonable delay" in Diop's proceedings because he was given continuances to find an attorney, to draft an application for asylum and withholding of removal, and because he took several appeals. Diop responds that the delay is attributable to the immigration judge's continued errors, which necessitated the appeals and remands. We agree with the Government that the reasonableness determination must take into account a given individual detainee's need for more or less time, as well as the exigencies of a particular case. But we also conclude that reasonableness must take into account errors in the proceedings that cause unnecessary delay. No system of justice can be error-free, and those errors require time to fix. Nevertheless, in this case the immigration judge's numerous errors, combined with the Government's failure to secure, at the earliest possible time, evidence that bore directly on the issue of whether Diop was properly detained, resulted in an unreasonable delay.

We cannot simply rely on the Government's determination of what is reasonable . . . . [C]ourts reviewing petitions for writ of habeas corpus must exercise their independent judgment as to what is reasonable . . . . In Zadvydas, the Supreme Court adopted a presumption that six months of detention pursuant to the post-removal statute was reasonable . . . . We decline to adopt such a one-size-fits-all approach. Reasonableness, by its very nature, is a fact-dependent inquiry requiring an assessment of all of the circumstances of any given case. That being said, we note that the reasonableness of any given detention pursuant to § 1226(c) is a function of whether it is necessary to fulfill the purpose of the statute, and, given that Congress and the Supreme Court believed those purposes would be fulfilled in the vast majority of cases within a month and a half, and five months at the maximum, see Demore, 538 U.S. at 530, the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past those thresholds. In this case, there can be no question that Diop's detention for nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the community, was unreasonable and, therefore, a violation of the Due Process Clause.

Diop, 656 F.3d at 233-35 (citations omitted).

In Leslie v. Attorney General 678 F.3d 265 (3d Cir. 2012), the Third Circuit applied Diop and determined that the pre-removal period detention of Neville Leslie, a citizen of Jamaica, was unreasonable in length where Leslie had been detained nearly four full years (March 28, 2008, through March 19, 2012).  The Third Circuit compared Leslie's four-year detention to Diop's almost three-year detention, and concluded that Leslie's detention was unreasonable:

> A comparison of Leslie's detention to Diop's makes clear that Leslie's detention is unreasonable.  In the present case, Leslie has been detained over a year longer than Diop had been.  Although Leslie has requested and received a single continuance during that time, that continuance lasted for approximately five weeks, and cannot credibly be considered as a factor in the length of his detention.  To the extent that his detention has exceeded the expected five month period for an appealed removal case, that extra time has been the result of appeals in which Leslie has prevailed; his initial appeal to this court was pending for nearly two years.  Following this court's order in that appeal, Leslie's next hearing was not scheduled for almost seven months, and following that hearing, approximately six months passed during the pendency of Leslie's appeal to the BIA, which was delayed and ultimately remanded for further proceedings, due entirely to clerical errors made by the immigration judge.  "Although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take." Ly v. Hansen, 351 F.3d 263, 272 (6th Cir.2003).
>
> In short, over the course of his nearly four year detention, Leslie is responsible for a five week delay for unspecified medical reasons, and for the delay caused by his pursuit of bona fide legal challenges to his removal.  To conclude that Leslie's voluntary pursuit of such challenges renders the corresponding increase in time of detention reasonable, would "effectively punish [Leslie] for pursuing applicable legal remedies," Oyedeji v. Ashcroft, 332 F.Supp.2d 747, 753 (M.D. Pa.2004), and we decline the government's invitation to adopt such a position.

Leslie, 678 F.3d at 270.

District Courts in this circuit considering the reasonableness of pre-removal period detention under Diop have reached varying conclusions.  For example, Chief Judge Yvette Kane ruled that an alien's seven-month pre-removal period detention under § 1226(c) was not

12

unreasonably prolonged, since the Supreme Court had found the petitioner's six-month detention constitutional in Demore.  See Hernandez v. Sabol, 823 F. Supp. 2d 266 (M.D. Pa. 2011).  Judge Chesler ruled in Bete v. Holder, 2012 WL 1067747 (D.N.J. Mar. 29, 2012), that Christian Bete's pre-removal-period detention for 12 months had not become unreasonable in length under Diop.  Most significantly, Judge William J. Martini held in Maynard v. Hendrix, 2011 WL 6176202 (D.N.J. Dec. 12, 2011), that, where Maynard's detention for 18 months was primarily the result of his having requested 10 continuances before the Immigration Judge, his pre-removal period detention was not unreasonable in length.  On the other hand, in Gupta v. Sabol, 2011 WL 3897964 *3 (M.D. Pa. Sept. 6, 2011), Judge Christopher C. Conner held that, where the Board of Immigration Appeals had remanded the matter to the Immigration Judge once, the Immigration Judge had again ordered Gupta's removal to India, and a second appeal to the BIA was pending, Gupta's pre-removal period detention for 20 months was unreasonable under Diop.

     In this case, the length of Espinoza-Loor's detention is correlated with the fact that Espinoza-Loor requested at least eight adjournments of his hearing before the Immigration Judge.  Moreover, a comparison of Espinoza-Loor's detention to Diop's and Leslie's indicates that his detention for 13 months has not become unreasonable in length.  Under these circumstances, this Court will dismiss the Petition.  This Court emphasizes, however, that the dismissal is without prejudice to the filing another § 2241 petition in the event that Espinoza-Loor believes that his detention has become unreasonable.

13

### III.  CONCLUSION

For the reasons set forth above, the Court dismisses the Petition without prejudice.


                                        s/ Faith S. Hochberg  
                                        **FAITH S. HOCHBERG, U.S.D.J.**

DATED:  July 2, 2012